FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 21, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

CHRISTOPHER D. P.,

                Plaintiff,

   v.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,[1]

                Defendant.

NO:  2:18-CV-114-FVS

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross-motions for summary

judgment.  ECF Nos. 13, 15.  This matter was submitted for consideration without

oral argument.  Plaintiff is represented by attorney Dana C. Madsen.  Defendant is

---

[1] Andrew M. Saul is now the Commissioner of the Social Security

Administration.  Accordingly, the Court substitutes Andrew M. Saul as the

Defendant and directs the Clerk to update the docket sheet.  *See* Fed. R. Civ. P.

25(d).

represented by Special Assistant United States Attorney Jeffrey E. Staples. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 13, is denied and Defendant's Motion, ECF No. 15, is granted.

## JURISDICTION

Plaintiff Christopher D. P.[2] (Plaintiff), filed for disability insurance benefits (DIB) and supplemental security income (SSI) on August 9, 2001. Tr. 16. Benefits were awarded as of November 15, 1999. Tr. 16. On September 30, 2014, after a periodic review, it was determined that Plaintiff was no longer disabled as of October 1, 2014. Tr. 96-97, 131-36. The decision was upheld on reconsideration after a hearing by a state agency hearing officer on June 10, 2015. Tr. 98-125, 138-62. Upon further reconsideration, the state agency hearing officer revised the disability cessation date to August 1, 2015. Tr. 149, 162.

Plaintiff requested further review and appeared at a hearing before an administrative law judge (ALJ) on January 6, 2017. Tr. 60-91. On April 19, 2017, the ALJ issued an unfavorable decision, Tr.16-29, and on June 8, 2018, the Appeals

---

[2]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

1　Council denied review.  Tr. 1-5.  The matter is now before this Court pursuant to 42

2　U.S.C. § 405(g); 1383(c)(3).

### BACKGROUND

4　　　　The facts of the case are set forth in the administrative hearing and transcripts,

5　the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are

6　therefore only summarized here.

7　　　　Plaintiff was 40 years old at the time of the hearing.  Tr. 71.  He has a high

8　school diploma.  Tr. 71.  He last worked in 2000.  Tr. 72.  He was fired from his last

9　job.  Tr. 72.  He was admitted Eastern State Hospital four times in 2001.  Tr. 72-73,

10　307.  He was hospitalized for major depression, anxiety, PTSD, and intermittent

11　explosive disorder.  Tr. 72.  He testified his symptoms have gotten worse over the

12　years.  Tr. 73.  Medication has helped "very little."  Tr. 74.  He testified medication

13　makes his anger worse and gives him nightmares.  Tr. 74.  He is depressed every day

14　and is always anxious.  Tr. 75.  He has flashbacks due to PTSD at least three times

15　per week.  Tr. 76.  He has major insomnia.  Tr. 76.  When he is under high stress or

16　if someone argues with him, he tends to explode.  Tr. 76-77.  He might yell, throw

17　things, or become physically violent.  Tr. 77.

18　　　　Plaintiff testified that he has problems with his back, knees, and angina.  Tr.

19　79.  His chest pain occurs one to two times per week for ten to 15 minutes at a time.

20　Tr. 80.  He has back pain every day.  Tr. 80.  He lies in bed from four to six hours,

21　two to three times per week, sometimes more often.  Tr. 80.  Walking hurts due to

pain in Plaintiff's knees. Tr. 81. He has gained weight over the years. Tr. 84-85. Pain makes it difficult to exercise. Tr. 85.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it

is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## SEQUENTIAL EVALUATION PROCESS

Once eligibility for disability benefits is established, the Commissioner periodically reviews whether entitlement to benefits continues. 20 C.F.R. §§ 404.1594, 416.994. The multi-step review process is similar to the five-step sequential evaluation process for evaluating initial claims but requires the Commissioner to determine whether there has been medical improvement. *Compare* 20 C.F.R. §§ 404.1520, 416.920 *with* §§ 404.1594(f), 416.994(b)(5).

Review of ongoing eligibility for disability benefits involves an eight-step process.[3] 20 C.F.R. §§ 404.1594(f)(1)-(8), 416.994(b)(5)(i)-(viii). At step one for Title II claims only, the Commissioner considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). If so, the Commissioner must determine that disability has ended. *Id.* Substantial gainful activity is not considered at step one of a Title XVI eligibility review. 20 C.F.R. § 404.416(b)(5)(i).

---

[3] Although Title II and Title XVI both provide an eight-step process for reviewing continued eligibility for benefits, the review process differs slightly for each Title.

1    If the claimant is not engaged in substantial gainful activity, the analysis

2    proceeds to step two for Title II claims.  This is the first step for Title XVI claims.

3    At this step, the Commissioner determines whether the claimant has an impairment

4    or combination of impairments that meets or equals the severity of an impairment

5    listed in 20 C.F.R. pt. 404, Subpt. P, App. 1.  20 C.F.R. §§ 404.1594(f)(2),

6    416.994(b)(5)(i).  If the impairment meets or equals a listed impairment, then

7    disability continues.  *Id*.

8    If the impairment does not meet or equal a listed impairment, at step three

9    for Title II claims and step two for Title XVI claims, the Commissioner determines

10   whether there has been medical improvement in the claimant's condition.  20

11   C.F.R. §§ 404.1594(f)(3), 416.994(b)(5)(ii).  Medical improvement is "any

12   decrease in the medical severity" of the impairment that was present at the time the

13   individual was disabled or continued to be disabled.  20 C.F.R. §§ 404.1594(b)(1),

14   416.994(b)(1)(i).

15    If there has been medical improvement, at step four for Title II claims and

16   step three for Title XVI claims, the Commissioner determines whether such

17   improvement is related to the claimant's ability to do work; that is, whether there

18   has been an increase in the individual's residual functional capacity based on the

19   most recent favorable determination.  20 C.F.R. §§ 404.1594(f)(4),

20   416.994(b)(5)(iii).  If the answer at this step is yes, the Commissioner skips to step

21   six for Title II claims and step five for Title XVI claims and inquires whether all of

the claimant's current impairments in combination are severe. *Id.* If there has been no medical improvement or medical improvement is not related to the claimant's ability to work, the evaluation proceeds to the next step. *Id.*

At step five for Title II claims and step four for Title XVI claims, if there has been no medical improvement or the medical improvement is not related to the ability to do work, the Commissioner determines whether special exceptions apply. 20 C.F.R. §§ 404.1594(f)(5), 416.994(b)(5)(iv); *see* 20 C.F.R. §§ 404.1594(d) and (e), 416.994(b)(3) and (b)(4). The analysis proceeds to the next step if one of the first group of exceptions applies; disability ends if one of the second group of exceptions applies; and if none applies, disability continues. 20 C.F.R. §§ 404.1594(f)(5), 416.994(b)(5)(iv).

At step six for Title II claims and step five for Title XVI claims, if medical improvement is shown to be related to the claimant's ability to work, or if one of the first group of exceptions to medical improvement applies, the Commissioner determines whether the claimant's current impairments in combination are severe; that is, whether they impose more than a minimal limitation on the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1594(f)(6), 416.994(b)(5)(v); *see* 20 C.F.R. §§ 404.1522, 416.922. If the finding is that the claimant's current impairments are not severe, the claimant is no longer considered to be disabled. 20 C.F.R. §§ 404.1594(f)(6), 416.994(b)(5)(v).

If the finding is that the claimant's current impairments are severe, at step seven for Title II claims and step six for Title XVI claims, the Commissioner makes a residual functional capacity finding and determines whether the claimant can perform past relevant work. 20 C.F.R. §§ 404.1594(f)(7), 404.1560, 416.994(b)(5)(vi), 416.960; *see also* S.S.R. 82-61. If the claimant can perform past relevant work, the Commissioner will find that disability has ended. 20 C.F.R. §§ 404.1594(f)(7), 416.994(b)(5)(vi).

Finally, at step eight for Title II claims and step seven for Title XVI claims, if the claimant cannot perform past relevant work, the Commissioner determines whether there is other work available in the national economy that the claimant can perform given his age, education, work experience, and residual functional capacity. 20 C.F.R. §§ 404.1594(f)(8), 416.994(b)(5)(vii). If there is other work that the claimant can perform, the Commissioner will find that disability has ended. If the claimant cannot perform a significant number of other jobs, the Commissioner will find that disability continues. *Id*.

For Title XVI claims, step eight allows the analysis to continue if the evidence is insufficient to make a finding regarding past relevant work. 20 C.F.R. § 404.994(b)(5)(viii). In that case, the Commissioner will determine whether the claimant can adjust to other work based solely in his age, education and residual functional capacity. *Id.*

# ALJ'S FINDINGS

First, the ALJ found that Plaintiff did not engage in substantial gainful activity as of August 1, 2015, the date Plaintiff's disability ended. Tr. 18. Next, the ALJ found that as of August 1, 2015, Plaintiff had the following severe impairments: unspecified depressive disorder; personality disorder with antisocial and borderline features; marijuana dependence; morbid obesity; chondromalacia of the knees; and musculoskeletal back pain due to probable degenerative changes. Tr. 18. The ALJ then found that Plaintiff has not had an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 18.

The ALJ next found that medical improvement occurred as of August 1, 2015, and determined that Plaintiff's medical improvement is related to the ability to work because it resulted in an increase in Plaintiff's residual functional capacity. Tr. 19-20. The ALJ also found that beginning August 1, 2015, Plaintiff continued to have a severe impairment or combination of impairments. Tr. 21.

The ALJ then determined that as of August 1, 2015, Plaintiff has had the residual functional capacity to perform light work with the following additional limitations:

> the claimant can stand/walk for 2/8 hours not the usual 6/8 for light work, can push/pull unlimitedly within the parameters of the lift/carry restriction, can occasionally perform postural activities (i.e., climbing ramps and stairs, balancing, crouching, crawling, kneeling, or stooping) except no climbing ladders, ropes, or scaffolds, should avoid concentrated exposure to industrial vibration, should avoid all exposure to hazards such as dangerous machinery and unprotected heights, should avoid all commercial driving, can perform semiskilled

> SVP 3 or lower tasks, can interact with the general public and coworkers on a brief, superficial basis, and can interact with coworkers on a superficial basis.

Tr. 21.

The ALJ found that Plaintiff has no past relevant work. Tr. 27. At the next step, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff has been able to perform, such as small parts assembler, mail room clerk, and food assembler. Tr. 27-28. Thus, the ALJ concluded that Plaintiff's disability ended on August 1, 2015, and Plaintiff has not become disabled again since that date. Tr. 28.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision ending disability income benefits under Title II and supplemental security income under Title XVI of the Social Security Act. ECF No. 13. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's symptom claims;

2. Whether the ALJ properly considered the medical opinion evidence; and

3. Whether the ALJ's medical improvement analysis is legally sufficient. ECF No. 13 at 13.

# DISCUSSION

## A. Symptom Claims

Plaintiff contends the ALJ improperly rejected his symptom claims. ECF No. 13 at 14-16. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to

permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds that the ALJ provided specific, clear, and convincing reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms less than fully persuasive. Tr. 23.

First, the ALJ found the record as a whole does not document longitudinal objective medical findings supporting a conclusion of total disability or consistent with Plaintiff's allegations. Tr. 23. An ALJ may not discredit a claimant's` pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a

relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857. The ALJ discussed the medical evidence and noted findings inconsistent with disability and inconsistent with Plaintiff's allegations. Tr. 22-24.

Plaintiff does not address the medical evidence but argues only that the ALJ may not reject Plaintiff's symptoms complains "solely because" they are not substantiated by objective medical evidence. ECF No. 13 at 15 (citing *Robbins v. Comm'r of Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). Plaintiff did not acknowledge the ALJ's other reasons for finding his symptom complaints less than fully credible and failed to discuss or demonstrate how the ALJ's interpretation of the objective evidence is flawed. Tr. 22-24. Because the lack of supporting objective evidence is not the only reason cited by the ALJ for rejecting the severity and degree of Plaintiff's limitations, and because the ALJ's finding is supported by substantial evidence, there is no error.

Second, the ALJ found Plaintiff had little treatment for his physical and mental health symptoms. Credibility is undermined "by unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment. While there are any number of good reasons for not doing so, a claimant's failure to assert one, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." *Fair*, 885 F.2d at 603 (internal citations omitted). The ALJ noted there was no

reason for Plaintiff not to seek treatment as he had access to medical benefits and time for appointments because he was not working. Tr. 23. The ALJ reasonably inferred that treatment is not a big priority for Plaintiff because his symptoms are not causing significant limitations. Tr. 24.

On reply, Plaintiff argues for the first time that he did seek treatment, citing counseling records from Frontier Behavioral Health from October 21, 2014, to June 17, 2015. ECF No. 16 at 2 (citing Tr. 407-75). However, these records predate August 1, 2015, the date the ALJ found that disability ended. The ALJ observed that at the time of the hearing, Plaintiff had not restarted counseling despite opportunities to do so. Tr. 24. This is a clear and convincing reason supported by substantial evidence.

The ALJ gave other reasons for finding Plaintiff's allegations less than fully credible which are not challenged by Plaintiff. The ALJ found Plaintiff's mental health improved with treatment. Tr. 24 (citing Tr. 144, 407-08). An impairment that can be effectively controlled with treatment is not disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ found Plaintiff's daily activities have been significant and inconsistent with disability. Tr. 24 (citing Tr. 100, 103, 347). It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in making the credibility determination. *See Rollins*, 261 F.3d at 857. The ALJ also noted other inconsistencies in the record. Tr. 24, 26. In evaluating a claimant's

symptom claims, the ALJ may rely on ordinary techniques of credibility evaluation. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). All of these reasons were supported by citations to the record and the ALJ's findings are based on a reasonable interpretation of the evidence. These are clear and convincing reasons supported by substantial evidence for finding Plaintiff's symptom allegations less than fully credible.

**B.     Medical Opinion Evidence**

Plaintiff contends the ALJ gave too much weight to the opinions of examining psychologist, Amy Powell, Ph.D., and examining medical expert Jay Toews, Ed.D., and should have relied on the opinions of examining physician, Dennis Twigg, M.D., examining psychologist Joyce Everhart, Ph.D., and examining psychologist, John Severinghaus, Ph.D. ECF No. 13 at 17.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d at 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of

specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

1. *Dennis Twigg, M.D., Joyce Everhart, Ph.D., and John Severinghaus, Ph.D.*

Drs. Twigg, Everhart, and Severinghaus opined that Plaintiff had significant impairments suggesting disability in 2003, 2004, and 2009, respectively. Tr. 321-24, 325-28, 338-43. Without any explanation or detailed argument, Plaintiff asserts that the ALJ should have relied on these opinions over other the opinions of examining psychologist Amy Dowell, Ph.D., and the medical expert, Jay Toews, Ed.D. ECF No. 13 at 17. As noted by Defendant, the ALJ need not discuss all evidence presented, but must explain why significant probative evidence has been rejected. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984); ECF No. 15 at

5. The ALJ did not need to address the opinions of Drs. Twigg, Everhart, and Severinghaus because their opinions were rendered during the period of disability. *See* Tr. 16. The opinions were neither credited nor rejected because they do not speak to the issue before the ALJ: whether Plaintiff experienced medical improvement such that he was no longer disabled as of August 1, 2015. Thus, the opinions were not significant probative evidence in the matter at hand and the ALJ did not err.

### 2. Amy Dowell, Ph.D.

Dr. Dowell examined Plaintiff in September 2014 and completed a functional assessment. Tr. 346-50. She diagnosed mild depressive disorder and noted it is a treatable problem with a good likelihood of recovery. Tr. 349. Dr. Dowell found Plaintiff "appeared very high functioning" and did very well on his mental status exam. Tr. 349. Objectively, Plaintiff did not show any signs of intermittent explosive disorder or difficulty interacting with people. Tr. 349. Dr. Dowell opined that Plaintiff has the ability to perform simple and repetitive tasks and detailed and complex tasks; can accept instructions from supervisors and interact with coworkers and the public; can perform work activities on a consistent basis without special or additional instruction; can maintain regular attendance and complete a normal workday/work week without interruptions from a psychiatric condition; and can deal with the usual stress encountered in the workplace. Tr. 349-50. The ALJ gave great weight to Dr. Dowell's opinion. Tr. 25.

1   Plaintiff suggests the ALJ should not have given great weight to Dr.

2   Dowell's opinion because, "Dr. Dowell did not indicate in her report whether or

3   not [Plaintiff's] condition had improved." ECF No. 13 at 16. When an ALJ

4   incorporates a doctor's findings into the residual functional capacity finding, the

5   ALJ does not need to provide reasons for rejecting the opinion. *See Turner v.*

6   *Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010). Plaintiff asserts that,

7   "[h]ad [Dr. Dowell] been supplied with all of [Plaintiff's] medical records and

8   counseling records, she would have found that Mr. Powell's condition had not

9   improved." ECF No. 13 at 16-17.

10      First, Plaintiff's argument is speculative and without basis in the record.

11  Plaintiff has no way of knowing what Dr. Dowell "would have found" in any other

12  circumstance. Second, Plaintiff overlooks that Dr. Dowell reviewed Dr. Everhart's

13  records, Dr. Severinghaus' records, and 2001 Eastern State Hospital records. Tr.

14  346. Plaintiff fails to identify any specific records which conflict with Dr.

15  Dowell's finding. Third, even if some evidence in the record conflicted with Dr.

16  Dowell's findings, this would not establish error. As discussed *supra*, the ALJ

17  reviewed the objective evidence in detail and the ALJ's findings are supported by

18  substantial evidence. The ALJ, not this Court, is responsible for reviewing the

19  evidence and resolving conflicts or ambiguities. *Magallanes v. Bowen*, 881 F.2d

20  747, 751 (9th Cir.1989); *see also Richardson v. Perales*, 402 U.S. 389, 400 (1971).

21  The ALJ did not err in evaluating Dr. Dowell's opinion.

### 3. *Jay Toews, Ed.D.*

Dr. Toews reviewed the record and testified that the medical evidence establishes unspecified depressive disorder and personality disorder with antisocial and borderline features but found insufficient support for a PTSD diagnosis. Tr. 64-65. He opined that Plaintiff could perform simple, repetitive SVP 3 tasks. Tr. 67. He assessed a marked limitation on Plaintiff's ability to work with the general public which does not extend to coworkers because Plaintiff is capable of superficial interaction with coworkers. Tr. 22, 66. The ALJ gave substantial weight to Dr. Toews' opinion. Tr. 24.

Plaintiff's argument is unclear but seems to imply that Dr. Toews opinion was given too much weight because he did not treat or examine Plaintiff. ECF No. 13 at 16-17. The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and are consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). Dr. Toews testified and the ALJ discussed other evidence in the record which is consistent with his opinion, including the opinion of Dr. Dowell. Tr. 22, 64-67. Furthermore, there is no contradictory opinion in the medical record.

Plaintiff notes that Dr. Toews discounted GAF scores assessed by counselors at Frontier Behavioral Health. ECF No. 13 at 16. Dr. Toews acknowledged GAF scores of 41 and 43 indicating "serious impairment" were assessed in October

2014 and February 2015, respectively.[4]  Tr. 68, 454, 466.  However, Dr. Toews

stated he did not agree that those assessments were accurate and stated that, "after

reading lots of records of Frontier Mental Health, their GAF is generally 15 to 20

points lower than anybody else's and my suspicion is it's not a lot of training and

experience of personnel doing these ratings."  Tr. 68.  Plaintiff argues that "Dr.

Toew's [sic] suspicion does not constitute substantial evidence."  ECF No. 13 at

16.

Presumably, Plaintiff intends to argue Dr. Toews improperly rejected the

two GAF scores from Frontier Behavioral Health.  However, Plaintiff overlooks

that Dr. Toews noted the record supports his conclusion because Plaintiff

subjectively reported his depression as bad but indicated that his depression was

mild to not very bad on the depression scale.  Tr. 69.  For example, in February

2014, the counselor noted, "[Plaintiff] restates that his Depression [sic] is so 'bad,'

but also reports that it is a 3/10 and he has no SI or plan."  Tr. 454.  Furthermore,

even assuming for the sake of argument that Dr. Toews improperly rejected the

GAF scores, the question at hand is whether the ALJ's findings are supported by

substantial evidence.

---

[4] A GAF score of 41-50 indicates serious symptoms or any serious impairment in

social, occupation, or school functioning.  DIAGNOSTIC AND STATISTICAL MANUAL

OF MENTAL DISORDERS, at 32 (Am. Psychiatric Ass'n 4th ed.) (1994).

The ALJ rejected the GAF scores for several reasons.  First, the ALJ found that the GAF scores "were only snapshots of the claimant's ability to function, were not always based on factors related to work ability, and were based on subjective statements by the claimant that have varied throughout the record."  Tr. 25.  Clinicians use a GAF to rate the psychological, social, and occupational functioning of a patient.  The scale does not evaluate impairments caused by psychological or environmental factors.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 598 (9th Cir. 1999).  Moreover, the Commissioner has explicitly disavowed use of GAF scores as indicators of disability.  "The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorder listings."  Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746-01, 50764-65 (August 21, 2000).  Second, the ALJ noted Dr. Toews' testimony and found it is supported by a June 2015 record from Frontier Behavioral Health indicating his symptoms were significantly improved.  Tr. 25, 408-09.  Third, the ALJ observed the GAF scale is no longer included in the DSM–V due to its subjectivity and unreliability.  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (Am. Psychiatric Ass'n 5th ed.) (2013).  Plaintiff does not address any of the ALJ's reasons for rejecting the GAF scores.  For all of these reasons, the ALJ's rejection of the GAF scores was appropriate and supported by substantial evidence.

## C. Medical Improvement

Plaintiff contends there is no evidence of medical improvement to support the cessation of his disability benefits. ECF No. 13 at 16-17. Plaintiff's argument regarding medical improvement assumes that the ALJ erred by giving weight to the opinions of Drs. Dowell and Toews. ECF No. 13 at 16-17. As discussed *supra*, the ALJ properly considered those opinions indicating Plaintiff's mental health has improved. Thus, the ALJ's finding regarding medical improvement is based on substantial evidence.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly,

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** August 21, 2019.

_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Judge